# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  60543-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MIKE BRUCE GLENN, | |
| Appellant. | |

PRICE, A.C.J. — Mike B. Glenn appeals his sentence for his convictions for one count of unlawful possession of a controlled substance with an intent to deliver and three counts of bail jumping.  He argues that the superior court abused its discretion by failing to meaningfully consider his request for a mental health sentencing alternative (MHSA).  We disagree and affirm Glenn's sentence.

## FACTS

In December 2017, law enforcement arrested Glenn on an outstanding felony escape warrant.  During the arrest, law enforcement also found a BB gun and heroin in Glenn's possession as well as "a digital scale, a notebook with pay/owe information, more dark brown tar-like substance consistent with heroin, and individual packaging material that matched the packaging [of] the suspected heroin located on Glenn's person."  Clerk's Papers (CP) at 86-87.  At the time of his arrest, Glenn had been selling narcotics and was on his way to deliver heroin to a friend.

The State charged Glenn with possession of a controlled substance with an intent to deliver. After Glenn failed to appear for multiple pretrial hearings, the State amended its information to include three additional counts of bail jumping.

In January 2023, Glenn entered the Thurston County Drug Court program. However, he was eventually terminated from the program after violating the terms of his drug court contract. Pursuant to his drug court contract, Glenn's termination resulted in a stipulated facts bench trial. After which, the superior court found Glenn guilty of all four charges.

Prior to sentencing, Glenn filed a memorandum asking the sentencing court to consider imposing an MHSA sentence. In the memorandum, Glenn stated that he had never received adequate mental healthcare, and because of this, he had been repeatedly incarcerated. The memorandum also included a mental health evaluation diagnosing Glenn with "Schizoaffective Disorder, Complex Post Traumatic Stress Disorder & Social Anxiety Disorder." CP at 135 (boldface omitted).

The Department of Corrections filed a Pre-sentence Mental Health Sentencing Alternative Addendum, which similarly noted Glenn's struggles with his mental health as well as his difficulties with complying with community supervision. The addendum stated that Glenn had "a long history of non-compliance with Department of Corrections community supervision"; it explained that Glenn had received 20 violations of his community supervision and had been terminated from a Drug Sentencing Alternative (DOSA) program. CP at 141.

After hearing the parties' arguments, the sentencing court denied Glenn's request for an MHSA sentence. In making its ruling, the sentencing court first commended defense counsel for coordinating the appropriate resources to make this request and for advocating for why an MHSA

would help Glenn manage his mental health issues that contributed to his criminality. The sentencing court acknowledged that Glenn's mental health diagnoses would be better addressed by an MHSA sentence than in prison, but at the same time it expressed concern about how an MHSA was "a relatively new program" that the legislature could have made "more robust." Verbatim Rep. of Proc. (VRP) at 120-21.

Next, the sentencing court explained that it would consider both the interests of the community and of Glenn as an individual.

As for the community interests, the sentencing court expressed concern about the program's lack of support and structure for Glenn specifically, given his previous struggles with compliance. It explained,

> If I impose a mental health sentencing alternative and you are not successful, I'm concerned about the community. When I look at your high offender score, your criminal history, and the types of crimes, I am concerned about community safety. And making a decision where the sentence is a structured community custody, with less intensive support than drug court, from my understanding and my view, does make me concerned about the community.

VRP at 121.

As for the interests of Glenn as an individual, the sentencing court acknowledged that Glenn would potentially benefit from an MHSA because he had not previously had "intense mental health support." VRP at 122. But the sentencing court was concerned about whether an MHSA sentence would provide Glenn with sufficient structure given his criminal history and his termination from drug court. Drawing on its drug court experience, it explained:

> All that said, I'm not able to determine that this—that this is a sentence that will be successful for you. I'm not going to impose a mental health sentencing alternative. . . . With the treatment plan and the history that I know, I am not confident—I'm not able to determine that it supports community safety or your individual success.

3

> I think given the history, and the recent history of the [chemical dependency treatment program] to drug court, and then not participating in that, I think very quickly we would be back here, and we would have invested all of that energy and resources, and we'd be looking at the prison sentence.

VRP at 122. After denying Glenn's request for an MHSA sentence, the sentencing court imposed a standard range sentence.

Glenn appeals.

ANALYSIS

Glenn argues that the sentencing court erred when it denied his request for an MHSA sentence. He contends that the sentencing court failed to meaningfully consider the statutory factors to determine his eligibility for an MHSA. We disagree.

The MHSA sentencing alternative allows the sentencing court to give eligible defendants mental health treatment, a reduced sentence, and increased supervision and support instead of a standard range prison sentence. RCW 9.94A.695. To be eligible for an MHSA sentence, the defendant must meet specific statutory criteria, including that they have been diagnosed with a serious mental illness and are willing to participate in the program. RCW 9.94A.695(1). The defendant also cannot have been convicted of a felony that is a serious violent offense or a sex offense. RCW 9.94A.695(1)(a). The defendant's participation in supervision and treatment must also be of benefit to both the defendant and the community. RCW 9.94A.695(1)(c), (4).

After determining whether a defendant is eligible for an MHSA sentence, the sentencing court is separately required to consider additional factors to determine if an *MHSA sentence is appropriate*:

> [T]he court shall consider whether the defendant and the community will benefit from the use of this sentencing alternative. The court shall consider the victim's opinion whether the defendant should receive a sentence under this section. . . .

RCW 9.94A.695(4).

Whether to grant a request for an alternative sentencing program is entirely within the court's discretion. *State v. Colon*, 34 Wn. App. 2d 353, 357, 567 P.3d 661, *review denied*, 5 Wn.3d 1011 (2025). Just because a defendant meets the eligibility requirements for an MHSA sentence does not necessarily mean that receiving such a sentencing alternative is *appropriate*. *See* RCW 9.94A.695(4); *cf. State v. Hender*, 180 Wn. App. 895, 900, 324 P.3d 780 (2014) (explaining that eligibility for the somewhat analogous DOSA program does not automatically lead to receiving that sentence).

A superior court only abuses this discretion if they categorically refuse to consider the request or deny the request on an impermissible basis. *Colon*, 34 Wn. App. 2d at 357. It is not an abuse of discretion if the sentencing court considers other factors that might contribute to the appropriateness of an MHSA sentence, such as the defendant's previous mental health treatment, "criminal history and . . . continued offenses while on conditional release," recidivism, and whether there was a nexus between the defendant's offenses and their mental illness. *Id.* at 358-59.

Here, Glenn argues that the sentencing court failed to "meaningfully consider" the statutory factors in RCW 9.94A.695. He contends that the sentencing court "only recited the factors without applying them to [him] or his case." Opening Br. at 31-32. He also contends that the sentencing court came to the conclusory decision that he was ineligible merely because "the statute lacked structure" and that "MHSA did not provide for tight control over [him], the type of control he might get in a [Department of Corrections] institution." Opening Br. at 21. According to Glenn,

the sentencing court failed to articulate specific concerns about his admission to the program and relied solely on his high offender score and criminal history. Finally, Glenn argues that the sentencing court further erred by failing to recognize its ability to mitigate any concerns it may have had by implementing additional sentencing conditions to ensure his compliance with the program.

We disagree that the sentencing court erred. The record does not support Glenn's assertion that the sentencing court merely "recited" the MHSA eligibility factors without applying them to his case. The court acknowledged that Glenn met several of the eligibility factors but then focused, appropriately so, on whether Glenn and the community would benefit from an MHSA sentence as required by RCW 9.94A.695(4).[1]

In fact, the sentencing court considered Glenn's specific criminal history, history of violating community supervision, and recent termination from drug court. After articulating how these factors applied uniquely to Glenn, the sentencing court carefully considered whether a standard range sentence or an MHSA alternative would be more beneficial for Glenn and for the community. This evaluation, conducted on the record, is precisely what is required of the sentencing court when a defendant requests an MHSA sentence. We reject the argument that the sentencing court was required to do more.

Nor do we see any validity to the argument that the sentencing court failed to recognize its discretion to impose additional community custody conditions to alleviate its community safety

---

[1] Because Glenn's drug and bail jumping crimes did not involve a specific victim, it was unnecessary for the sentencing court to consider a victim's "opinion" in its application of RCW 9.94A.695(4).

No. 60543-1-II

concerns. The sentencing court was very familiar with Glenn's particular criminal history and his chronic noncompliance with court orders, both from the Department of Correction's information and from its own observations from drug court. That the sentencing court did not impose yet *more* of these types of conditions in the context of an ill-fitting MHSA sentence is more consistent with this familiarity and less consistent with the wholly speculative accusation that the sentencing court did not recognize its own discretion.

## CONCLUSION

We see no abuse of the sentencing court's discretion and affirm Glenn's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, A.C.J.

We concur:

MAXA, J.

CRUSER, J.